**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

| | | |
|---|---|---|
| CARLTON SEARCY, as Natural Father, | : | |
| and MICHELLE SEARCY, as Natural | : | |
| Mother, and jointly as co-personal | : | |
| representatives of | : | |
| DON'TERIO SEARCY, deceased, | : | |
| | : | |
|      Plaintiffs, | : | |
| | : | |
| v. | : | CASE NO.: 1:14-CV-37 (WLS) |
| | : | |
| BEN HILL COUNTY SCHOOL | : | |
| DISTRICT and FLORIDA BIBLE | : | |
| CAMP, INC., | : | |
| | : | |
|      Defendants. | : | |
| _____ | : | |

**ORDER**

Presently pending is Defendant Ben Hill County School District's Motion to Dismiss (Doc. 11). For the following reasons, Defendant Ben Hill County School District's Motion to Dismiss (Doc. 11) is **GRANTED IN PART AND DENIED IN PART**.

## I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On or about July 31, 2011, Don'Terio Searcy, a seventeen-year-old high school student and football player at Fitzgerald High School ("FHS") a member school of Ben Hill County School District ("BHCSD") arrived at Florida Bible Camp ("FBC") in High Springs, Florida, to begin football practice and training. (Doc. 14 ¶ 11.)[1] On August 1, 2011, the football team held three separate practices. (*Id.* ¶ 15.) During the third football practice, Searcy began to experience symptoms of heat-related illness, including, but not

---

[1] The statement of facts comes from Plaintiffs' Second Amended Complaint, filed March 24, 2014, in this Court. (Doc. 14.)

limited to, lightheadedness, loss of consciousness, cramping, nausea, vomiting, and incoherent speech. (*Id.* ¶ 17.) A FHS football coach found Searcy unconscious in a bathroom on the FBC grounds during a practice that evening. (*Id.* ¶ 18.) The coach drove Searcy back to practice in a golf cart. (*Id.*) Searcy continued to exhibit symptoms of heat-related illness and/or a medical emergency throughout the evening. (*Id.* ¶ 19.) On August 2, 2011, Searcy attended practice. (*Id.* ¶ 21.) After practice, Searcy lost consciousness and ultimately died. (*Id.*)

On July 31, 2013, Carlton and Michelle Searcy, as natural father and mother and jointly as co-personal representatives of Don'Terio Searcy, filed a Georgia Wrongful Death Action in the Ben Hill Superior Court against BHCSD and FBC. (Doc. 1 ¶ 2; Doc. 1-3 at 3-14.) Plaintiffs filed their First Amended Complaint (hereinafter referred to as "FAC") on or about February 21, 2014. (*Id.*) In their FAC, Plaintiff's alleged that the School District deprived Searcy of due process of the law by failing to seek or summons emergency medical care by punishing Searcy while he was experiencing a medical emergency by denying him water, forcing him to perform physical drills, threatening and punishing him and his teammates, and shouting profanities at him, worsening his medical condition, all in violation of 42 U.S.C. § 1983. (Doc. 1-3 at 144 ¶ 34.) Per Plaintiffs, "[d]isciplining and bullying the minor decedent while he was experiencing a medical emergency further interfered with his right to bodily integrity and life." (*Id.*)

On March 4, 2014, BHCSD removed the case to this Court on the basis that the Court has original jurisdiction over Plaintiff's section 1983 claims against BHCSD. (*Id.* ¶¶ 3-4; *see* Doc. 1-3 at 144 ¶¶ 30-47.) On March 11, 2014, the School District filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) wherein it

requested that the Court dismiss Plaintiffs' FAC, which alleges state tort claims and claims pursuant to 42 U.S.C. § 1983, because the Complaint does not allege 1) conduct that is conscience shocking in the constitutional sense or 2) facts demonstrating that Don'Terio Searcy was harmed on account of an official policy or custom of BHCSD or any final policymaker, as is required by *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). BHCSD also alleges that Plaintiff's state-law tort claims against it are barred by sovereign immunity. (*See generally* Doc. 11-1.) On March 24, 2014, Plaintiff's filed another Amended Complaint (hereinafter referred to as the Second Amended Complaint ("SAC")). (Doc. 14.) Concurrently with the filing of their SAC, Plaintiffs also filed a Response to BHCSD's Motion to Dismiss. (Doc. 16.) BHCSD filed its Reply on April 7, 2014, wherein which it alleged that Plaintiffs' SAC is no less deficient than the FAC and is therefore still subject to dismissal. Now that the briefing on BHCSD's Motion to Dismiss has closed, the Court will assess Plaintiffs' SAC under Federal Rule of Civil Procedure 12(b)(6).

## II.    DISCUSSION

### A.    Standard of Review under Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a party to assert by motion the defense of failure to state a claim upon which relief can be granted.  A motion to dismiss a plaintiff's complaint under Rule 12(b)(6) should not be granted unless the plaintiff fails to plead enough facts to state a claim to relief that is plausible, and not merely just conceivable, on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Dismissal for failure to state a claim is proper if the factual allegations are not 'enough to raise a right to relief above the speculative level.'" *Edwards v. Prime, Inc.*, 602 F.3d

1276, 1291 (11th Cir. 2010) (quoting *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008)). "Stated differently, the factual allegations in the complaint must 'possess enough heft' to set forth 'a plausible entitlement to relief.'" *Edwards*, 602 F.3d at 1291 (quoting *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007)).

While the Court must conduct its analysis "accepting the allegations in the complaint as true and construing them in the light most favorable to the Plaintiff," *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003), in evaluating the sufficiency of a Plaintiff's pleadings the Court must "make reasonable inferences in [p]laintiff's favor, 'but we are not required to draw Plaintiff's inference.'" *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (quoting *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005)). The Supreme Court instructs that while on a Motion to Dismiss "a court must accept as true all of the allegations contained in a Complaint," this principle "is inapplicable to legal conclusions," which "must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949-54 (2009) (citing *Twombly*, 550 U.S. at 555, for the proposition that courts "are not bound to accept as true a legal conclusion couched as a factual allegation" in a complaint). In the post-*Twombly* era, "[d]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### B.    Analysis

Count III of Plaintiffs' Amended Complaint alleges that Don'Terio Searcy's Fourteenth Amendment substantive due process rights were violated by the conduct of

BHCSD, through its employees, FHS football coaches. Specifically, Plaintiffs allege that the football coaches, acting as employees of BHCSD and under color of the statutes, ordinances, regulations, policies, customs, and usages of BHCSD, deprived Searcy of life and bodily integrity without due process of law. (Doc. 14 ¶¶ 58-62.) Plaintiffs allege that Searcy's substantive due process rights were violated because Searcy's football coaches: 1) failed to seek or summons emergency medical care in Searcy's behalf and 2) punished Searcy while he was experiencing a medical emergency by denying him water, forcing him to perform physical drills, threatening and punishing him and his teammates, and shouting profanities at him. (*Id.* ¶ 61.) Plaintiffs also allege that disciplining and bullying Searcy while he was experiencing a medical emergency further interfered with his right to bodily integrity and life. (*Id.*)

In this case, Plaintiff have alleged that Searcy's substantive due process rights under the Due Process Clause of the Fourteenth Amendment were violated. Therefore, the Court must determine "whether the alleged facts, if true, would amount to a constitutional violation. As a general rule, to prevail on a claim of a substantive due-process violation, a plaintiff must prove that a defendant's conduct "shocks the conscience." *Nix v. Franklin Cnty. Sch. Dist.*, 311 F.3d 1373, 1377 (11th Cir. 2002).

"[T]he Due Process Clause was intended to prevent government officials from abusing their power, or employing it as an instrument of oppression." *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (internal quotations and citations omitted). The substantive component of the Due Process Clause "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) (quoting

*Daniels v. Williams*, 474 U.S. 327, 331 (1986)). "[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). Accordingly, "[c]onduct by a government actor will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience-shocking in a constitutional sense." *Davis v. Carter*, 555 F.3d 979, 982 (11th Cir. 2009) (citing *Lewis*, 523 U.S. at 847). The conscience-shocking standard is an exacting one that "duplicates no traditional category of common-law fault, but rather points clearly away from liability, or clearly toward it, only at the ends of the tort law's spectrum of culpability." *Lewis*, 523 U.S. at 848. Thus, the Supreme Court has "made it clear that the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm, . . . [nor is] the Fourteenth Amendment . . . a "font of tort law to be superimposed upon whatever systems may already be administered by the States." *Id.* (internal citations omitted). As applied, the conscience-shocking standard dictates that "negligent[] infliction of harm" is not sufficient; rather, in order to support a substantive due process claim, the conduct in question must be "conduct intended to injure in some way unjustifiable by any government interest." *Id.* at 848-49.

BHCSD contends that Plaintiffs' allegations do not rise to the level of conscience shocking. In support of its contention, BHCSD points to *Davis*, 555 F.3d 979, as being "directly on point both as a matter of fact and law." In *Davis*, the parents sued Rockdale County Public Schools, the State of Georgia, and various employees of RCHS, including three RCHS football coaches, pursuant to section 1983 for violations of their son's

substantive due process rights after the son died the morning after a voluntary workout session for the school football team. The *Davis* plaintiffs contended that their son was subjected to an intense and unreasonable practice that caused him to collapse and die the next morning. Specifically, plaintiffs alleged that the coaches failed to provide enough water to keep Davis hydrated, ignored signs and Davis's complaints that he was becoming dehydrated, subjected Davis to rigorous conditioning drills at the end of a two-hour practice, and failed to attend to Davis until after a team meeting, even though he had collapsed in the middle of the drills. Although the workout was admittedly voluntary, the *Davis* plaintiffs alleged that if a student did not perform all the exercises and activities in the workout, he would be subject to further discipline from the coaches, such as additional drills, exclusion from tryouts, or demotion to the junior varsity team.

Although the district court in *Davis* granted the defendants' Rule 12(b)(6) motion as to the Rockdale County Public Schools and some officials, the district court denied the RCHS football coaches' motion to dismiss, concluding that the plaintiffs' allegations were sufficient to support a finding that the coaches acted willfully or maliciously with an intent to injure Davis and that the coaches were not entitled to qualified immunity. *Id.* at 981. On appeal of the denial of qualified immunity, the Eleventh Circuit disagreed with the district court's assessment of the sufficiency of the constitutional allegations, however. *Id.* The Eleventh Circuit concluded that the facts militate more toward a finding that RCHS coaches acted *deliberately indifferent* to the safety risks posed by their conduct to Davis and "[i]n this school setting case, the complaint's allegations of deliberate indifference, without more, do not rise to the conscience-shocking level

required for a constitutional violation." *Id.* at 984. Per the Court, although the circumstances of Davis' death were "truly unfortunate," his parents' claims were "properly confined to the realm of torts." *Id.* Key to the Eleventh Circuit's rationale was that Davis's participation in football—an extracurricular after-school activity—was voluntary and, consequently, no custodial relationship existed between Davis and the school. *Id.* at 983. When no custodial relationship exists, there is no affirmative duty of protection, *id.* at 982 n.2 (citing *Wyke v. Polk Cnty. Sch. Bd.*, 129 F.3d 560, 569 (11th Cir. 1997), *to wit,* a "concomitant duty to provide for the student's 'safety and general well-being,'" *Wyke*, 129 F.3d at 569 ("Compulsory school attendance laws alone are not a "restraint of personal liberty" sufficient to give rise to an affirmative duty of protection . . . . Absent that type of restraint, there can be no concomitant duty to provide for the student's "safety and general well-being.")

Plaintiffs acknowledge that *Davis* and this case contain "undeniably similar" factual scenarios, but allege that, unlike Davis, Searcy was in a custodial relationship with his high school because he was attending an out-of-state football camp, which means the "school had assumed complete responsibility for his safety." (Doc. 16 ¶ 4.) Plaintiffs further allege that in *Wyke* the Eleventh Circuit established that schools have a custodial relationship with students. (*Id.*) To that end, Plaintiffs contend that because Searcy was in a custodial relationship with the school, they (Plaintiffs) need only show that Defendant acted with deliberate indifference.

The Court finds Plaintiffs' arguments to be unavailing for the purpose of defeating BHCSD's motion for a number of reasons. First, that Searcy was out of state when he engaged in an extracurricular school activity does not change the voluntary

nature of the activity. Searcy and his parents still retained the ability to decline to participate in the football camp, be it in or out of the State of Georgia. If state laws that mandate that children go to school are not sufficient to invoke a custodial relationship while children are *in* school, voluntary extracurricular activities out of school and out of state are even less sufficient to give rise to a custodial relationship with the school. *See Wright v. Lovin*, 32 F.3d 538, 540 (11th Cir. 1994) (in a pre-*Wyke* case involving a student's participation in a summer camp, noting that the reasons given by other circuits "for the absence of such a duty when school attendance is mandatory are even more compelling when school attendance is voluntary"); *Davis*, 555 F.3d at 982 n.2 ("Voluntary attendance at a school event does not create a custodial relationship with the school sufficient to give rise to a constitutional duty of protection.")

Second, *Wyke* stands for a completely different proposition than the one stated by Plaintiffs. As noted by the Court above, *Wyke* explicitly concluded that even "[c]ompulsory school attendance laws alone are not a "restraint of personal liberty" sufficient to give rise to an affirmative duty of protection." *Wyke*, 129 F.3d at 569. Per the Eleventh Circuit, "[b]y mandating school attendance, the state simply does not restrict a student's liberty in the same sense that it does when it incarcerates prisoners or when it commits mental patients involuntarily." *Id.*; *see also White v. Lemacks*, 183 F.3d 1253, 1257 (11th Cir. 1999) ("[I]t appears the only relationships that automatically give rise to a governmental duty to protect individuals from harm by third parties under the substantive due process clause are custodial relationships, such as those which arise from the incarceration of prisoners or other forms of involuntary confinement through which the government deprives individuals of their liberty and thus of their ability to

take care of themselves.") Consequently, the Eleventh Circuit stated that it "explicitly reject[s]" the contention that a school stands in a custodial relationship with a minor child even in the most typical circumstance—where the child is required to be in school. Therefore, it is unclear to the Court how exactly Plaintiffs concluded that *Wyke* stands for the proposition that schools have a custodial relationship with students, not only when they are in school, but also when they voluntarily participate in extracurricular activities. Nevertheless, there appears to be no question, in the Eleventh Circuit (and across most circuits, *see Wright*, 32 F.3d at 540 (collecting cases)), that a school lacks a custodial relationship with a student. *See, e.g., Worthington v. Elmore Cnty. Bd. of Ed.*, 160 F. App'x 877, 881 (11th Cir. 2005) (noting that in *Wyke* the Court "previously explained that public schools generally do not have the requisite level of control over children to give rise to a constitutional duty to protect them from third-party actors"); *Witsell v. Sch. Bd. of Hillsborough Cnty., Fla.*, No. 8:11-cv-781, 2012 WL 713748, at *6 (M.D. Fla. Mar. 5, 2012) ("[E]ven while supervising a student during the school day, absent some unidentified, abnormal, and peculiar restraint on liberty, a school lacks a "custodial relationship" with a student.") (citing *Wyke*, 129 F.3d at 569). And where there is no custodial relationship, the allegations in the complaint must rise to the level of conscience shocking.

Here, the Court finds Plaintiffs' allegations—deprivation of water, subjection to

continued rigorous practice[2], and failure to attend or seek medical help after Searcy collapsed—to be parallel to the *Davis* case's allegations and to be likewise devoid of any conduct demonstrating that FHS football coaches "acted willfully or maliciously with an intent to injure" Searcy. The additional allegations included by Plaintiffs—that Defendant BHCSD "inflicted corporal punishment" on Searcy by "forcing him to complete drills" and "disciplin[ed] and bull[ied]" Searcy while he was experiencing a medical emergency"—are nothing more than reiterations of Plaintiffs' allegations that Don'Terio Searcy was subjected to rigorous physical drills and treatment that may have been unreasonable and ill-advised under the circumstances but not conscience shocking. Similarly to the Eleventh Circuit's findings in *Davis*, there are no allegations that FHS coaches engaged in conduct actually constituting corporal punishment or physically contacted Searcy. *See Davis*, 555 F.3d at 984; *see also Nix*, 311 F.3d at 1377 (referring to a previous holding involving a coach who struck a student with a weight lock, knocking the student's eye out of the socket, and noting that "[o]nly in the limited context of due-process claims based on excessive corporal punishment has this court held that the intentional conduct of a high-school educator may shock the conscience") (citing *Neal v. Fulton Cnty. Bd. of Ed.*, 229 F.3d 1069, 1076 (11th Cir. 2000))). Thus, absent

---

[2] Plaintiffs contend that *Davis* is "significantly distinct" because, *inter alia*, Davis was only subjected to one two-hour practice whereas Searcy was subjected to three practices in one day. The Eleventh Circuit's decision in *Davis* turned on the fact that because the practices were voluntary and the school was not in a custodial relationship with Davis, at most, the football coaches' conduct was deliberately indifferent to the safety risks posed by their conduct. In this case, three practices are no less voluntary than one and do not evince a malicious intent to injure Searcy. Plaintiffs also point out that Davis was able to go home to his parents who could have taken him to the hospital whereas Searcy was out of state and therefore in the "custody" of the school. Despite Plaintiffs' use of the word "custody," Searcy was not in the custody of the school, *see* discussion *supra* pp. 8-10, and he and his parents made the decision to allow him to attend the camp where he would not be in his parents' care. This volitional decision on the part of Searcy and his parents does not make the circumstances of his tragic death any more conscience-shocking, however. As such, the Court finds Plaintiffs "distinctions" to be ones without a difference to the Court's ultimate conclusion.

allegations of more extreme conduct, Plaintiffs' SAC fails to cross the conscience-shocking threshold. For that reason, Plaintiffs have failed to sufficiently allege a substantive due process violation and their section 1983 claim is subject to dismissal.

The Court notes that even if Plaintiffs' allegations were sufficient to meet the conscience-shocking standard, they would still fail on account of the fact that Plaintiffs failed to identify a BHCSD custom or policy that caused the constitutional violation, had one existed. In order to state a section 1983 claim against a local government entity, a plaintiff "must identify a specific deprivation of federal rights *and* the local government policy or custom that caused the deprivation of federal rights." *Chaney v. Fayette Cnty. Public Sch. Dist.*, No. 3:13-cv-89, 2013 WL 5486829, at *7 (N.D. Ga. Sept. 30, 2013) (citing *Bd. of Cnty. Com'rs v. Brown*, 520 U.S. 397, 404 (1997)). *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 694 (1978), established that a local government entity may not be found liable under section 1983 for an injury inflicted solely by its employees or agents, even when that injury results in a constitutional violation. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* In other words, a local government entity is "is liable under section 1983 only for acts for which [the local government entity] is actually responsible." *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (additional citation omitted). Therefore, to plead a section 1983 violation against a local government entity, a plaintiff must allege facts showing that an official custom or policy of the local government entity caused the constitutional injury. *Id.*

To allege a custom or policy, a plaintiff must point to either: 1) an officially promulgated county policy or 2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county. *Id.* at 1329-30. Alleging vaguely that a policy, custom or practice exists is not enough; rather plaintiffs "must specifically identify which policy or practice, if any, caused [the] alleged injuries." *Daniels v. Prison Health Servs., Inc.*, No. 8:05-cv-01392, 2006 WL 319260, at *5 (M.D. Fla. Feb. 10, 2006) (citation omitted); *see also Grech*, 355 F.3d at 1329 (noting that the plaintiff must identify the policy or custom causing the injury).

In their FAC, filed before BHCSD's Motion to Dismiss, Plaintiffs merely alleged that FHS employees acted "in furtherance of the interest of BHCSD, with BHCSD's consent and . . . under color of the statutes, ordinances, regulations, policies, customs, and usages of Defendant BHCSD." (Doc. 9 at 13 ¶ 32.) Plaintiffs' SAC, filed in response to the Motion to Dismiss and in an apparent attempt to cure the custom/policy/practice-allegation concerns, alleged only that "Defendant [BHCSD] employee football coaches had a pattern and practice or custom and policy of failing to seek or summons emergency medical care for football players, [etc.]" (Doc. 14 ¶ 62.) The supplemental allegations in the SAC are still insufficient to invoke *Monell* liability in that they only refer to alleged customs or practices of FHS employees, not policies, customs or practices that can be attributed to BHCSD or a final policymaker of BHCSD. Accordingly, because Plaintiffs have failed to allege an officially promulgated policy or unofficial custom or practice of BHCSD, Plaintiffs have further failed to allege any conduct that would state a claim for section 1983 liability against BHCSD, even if the

facts of Plaintiffs' SAC stated a claim for a violation of Searcy's substantive due process rights. For this reason as well, Plaintiffs' section 1983 claim against BHCSD is dismissed.

## CONCLUSION

For all of the aforementioned reasons, Plaintiffs' 42 U.S.C. § 1983 claim against BHCSD is **DISMISSED**. Because the Court has dismissed the section 1983 claim that initially gave rise to "original jurisdiction," it declines to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims against BHCSD and FBC, which largely form the basis of their Complaint. *See, e.g., McCulloch v. PNC Bank Inc.*, 298 F.3d 1217, 1227 (11th Cir. 2002) ("The Court may decline to exercise jurisdiction over state-law claims, where the Court has dismissed all the federal claims over which it has original jurisdiction.") Therefore, the remainder of Plaintiffs' SAC Complaint is hereby **ORDERED REMANDED**, pursuant to 28 U.S.C. § 1367(c)(3), to the Ben Hill Superior Court from which it came. Accordingly, Defendant BHCSD's Motion to Dismiss Plaintiff's Complaint (Doc. 11) is **GRANTED-IN-PART** as to Plaintiffs' 42 U.S.C. § 1983 claim and **DENIED without prejudice** on all other grounds. Defendant FBC's Motion to Dismiss for Lack of Jurisdiction (Doc. 13) is also **DENIED without prejudice** as well.

**SO ORDERED**, this  16th  day of May 2014.

/s/ W. Louis Sands
**W. LOUIS SANDS, JUDGE**
**UNITED STATES DISTRICT COURT**